IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATE A. LINDELL,

               Plaintiff,

    v.

LIEUTENANT DANE M. ESSER,

               Defendant.

OPINION AND ORDER

13-cv-563-wmc

---

Plaintiff Nate A. Lindell has filed a proposed civil action pursuant to 42 U.S.C. § 1983, alleging constitutional violations in connection with the conditions of his confinement in the Wisconsin Department of Corrections. Although Lindell made an initial partial payment of the filing fee as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(b), the court dismissed his complaint initially for failure to comply with federal pleading rules regarding the joinder of multiple parties and unrelated claims set forth in Fed. R. Civ. P. 18 and 20. With leave of the court, Lindell has since filed an amended version of his complaint. Before Lindell may proceed under the federal *in forma pauperis* statute, however, the court must again screen this amended complaint pursuant to the PLRA, dismissing any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. In addressing any *pro se* litigant's pleadings, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). After reviewing the amended pleading under this lenient standard, the court must deny him leave to proceed for reasons set forth below.

SUMMARY OF PLAINTIFF'S PROPOSED CLAIMS

Lindell is presently confined by the Bureau of Prisons at the United States Penitentiary located in Coleman, Florida. At all times relevant to the amended complaint, Lindell was incarcerated by the Wisconsin Department of Corrections ("WDOC") at the Wisconsin Secure Program Facility ("WSPF") in Boscobel, where the named defendant, Lieutenant Dane M. Esser, is employed as a correctional officer.

The amended complaint apparently stems from a previous lawsuit that Lindell filed in 2005 against Esser and 31 other officers and officials employed by WDOC. *See Lindell v. O'Donell, et al.*, 05-cv-4-bbc (W.D. Wis.) (the "2005 lawsuit"). In that lawsuit, Lindell specifically alleged that Esser violated his rights under the Eighth Amendment by "throwing a meal tray" at him and then retaliating against him by filing false disciplinary charges. On October 24, 2005, this court granted summary judgment in defendants' favor on most of Lindell's claims, including the retaliation allegations against Esser. On March 3, 2006, a jury returned a verdict in favor of defendants on all of Lindell's remaining claims.

In this lawsuit, Lindell now claims that Esser retaliated against him because of this 2005 lawsuit or otherwise interfered with his rights under the First Amendment on seven, separate occasions. What follows is a brief summary of each instance of alleged retaliation or interference.

### 1. First Incident

On November 24, 2011, Lindell slid a manila envelope containing an "original piece of short fiction" under his cell door for placement in outgoing mail. Lindell then changed his mind about sending it. As he attempted to pull the envelope back into his cell, Esser seized it

2

and refused to return it. Characterizing the envelope and its contents as "contraband," Esser then "unjustifiably" accused Lindell in Conduct Report #2155409 of violating Wis. Admin. Code § DOC 303.40, which prohibits an "unauthorized transfer of property." Lindell was found guilty as charged, resulting in the loss of recreation privileges for seven days. Lindell alleges that Esser filed the charge in retaliation for the 2005 lawsuit.

### 2. Second Incident

On December 9, 2011, Esser seized another manila envelope that contained "printouts of comments left on Lindell's blog."[1] Esser then filed disciplinary charges against Lindell in Conduct Report #2155410, accusing him again of violating Wis. Admin. Code § DOC 303.40 by attempting to make another unauthorized transfer of property. Noting that he was found not guilty, Lindell argues that these charges were false and that Esser filed them in retaliation for his 2005 lawsuit.

### 3. Third Incident

Also on the evening of December 9, 2011, Esser allegedly directed two sergeants (who are not defendants here) to seize and search all "paper property" in Lindell's cell. Lindell's property was returned the following day, with the exception of three sheets of paper featuring Lindell's drawings of a "beautiful nude female." Also missing was a copy of Esser's personnel file, which had been disclosed to Lindell during the 2005 lawsuit. Lindell claims Esser used his authority as a supervisory officer to deprive him of his "art" and legal papers in retaliation for his 2005 lawsuit.

---

[1] *See* "Between the Bars: Prometheus Writes," at: http://www.betweenthebars.org/blogs/540/nathaniel-lindell (last visited Feb. 11, 2015).

### 4. Fourth Incident

On June 8, 2012, another prisoner at WSPF (Ronnie Peebles) asked Lindell to help him with a lawsuit involving his medical care. Lindell contends that Esser seized all of the paperwork that Peebles had given him without explanation or justification in retaliation for the 2005 lawsuit. Lindell also claims that Esser confiscated the papers belonging to Peebles in violation of Lindell's First Amendment rights to provide "legal assistance" and to write about Peebles' predicament as a "prison journalist."

### 5. Fifth Incident

On July 25, 2012, Esser and another officer allegedly confiscated all of Lindell's paperwork, which included legal files, his "wedge pillow" and his "extra blanket." Esser allegedly told Lindell that his paperwork was being taken because Lindell had assaulted an officer. Esser added that the Health Services Unit had informed him that Lindell was not approved to have a wedge pillow or an extra blanket.

Lindell maintains that he was authorized to have the paperwork, pillow and extra blanket. By depriving him of his paperwork, Lindell contends that Esser prevented him from filing an administrative grievance regarding an unspecified incident of "staff abuse" that occurred on July 22. Lindell contends that Esser deprived him of his property in retaliation for his 2005 lawsuit and to obstruct further litigation by Lindell.

### 6. Sixth Incident

In September 2012, Lindell was helping fellow inmate Sean Riker with some unspecified litigation. Riker sent Lindell three letters related to that litigation, but none of

4

the letters were delivered.  Lindell alleges that Esser, who was responsible for monitoring Riker's mail, intercepted and confiscated these letters in retaliation for Lindell's 2005 lawsuit. By confiscating these letters, Lindell again appears to claim that Esser violated his First Amendment right to provide legal assistance to other prisoners.

### 7. Seventh Incident

On October 28, 2012, Lindell sent Riker a letter that contained an original drawing, legal papers for a "pending case" filed by Riker, and "directions for an affidavit Lindell needed from Mr. Riker for one of Lindell's pending cases." Defendant Esser reportedly gave this letter to Captain Flannery to issue a notice of non-delivery because the letter was saturated with "blue pigment." Lindell appears to claim that Esser tampered with the letter in retaliation for the 2005 lawsuit and to deny Lindell's right to access the courts in violation of the First Amendment.

## OPINION

### I.   Retaliation Claims

As a general proposition, prison officials may not retaliate against a prisoner for filing lawsuits against them. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996). Recognizing that any perceptible slight may well be deemed retaliatory in the prison setting, however, the Seventh Circuit has emphasized that "not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). To state a viable cause of action, a prisoner must "allege a chronology of events from which retaliation may be

inferred." *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) (quoting *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987)).  To satisfy this pleading threshold, a plaintiff must: (1) identify a constitutionally protected activity in which he was engaged; (2) identify one or more retaliatory actions taken by defendant that would likely deter a person of "ordinary firmness" from engaging in the protected activity in the future; and (3) allege sufficient facts that would make it plausible to infer that plaintiff's protected activity was a motivating factor in defendant's decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 555-56 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

Here, Lindell alleges in conclusory fashion that Esser retaliated against him in 2011 and 2012 for a lawsuit that Lindell filed in early 2005, which was resolved in Esser's favor on summary judgment later that same fall, by (a) filing false disciplinary charges against him and (b) arbitrarily confiscating paperwork and mail.  Not only was Esser one of a multitude of defendants named in Lindell's 2005 lawsuit, but all seven alleged acts of retaliation occurred at least six and as much as seven years later.  On the pleadings, the 2005 lawsuit that Lindell filed against Esser is far too attenuated in context and remote in time to find a convincing chronology of events from which a retaliatory motive may plausibly be inferred.  *See Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (finding that a five-month delay between filing of lawsuit and the alleged adverse act was insufficient to support an inference of retaliation); *Williams v. Roberts*, 1997 WL 136268, *2 (N.D. Ill. 1997) (finding that allegations of adverse treatment occurring 16 months after filing suit were too remote to make a retaliation claim). Accordingly, the court must deny Lindell leave to proceed with a retaliation claim in this case.

6

## II.   Other First Amendment Claims

In addition to his claims of retaliation, Lindell contends that many of Esser's actions violated his rights under the First Amendment. In particular, Lindell contends that Esser violated his First Amendment rights by: (a) preventing him from providing legal assistance to other inmates; (b) interfering with his work as a prison journalist; and (c) denying him access to courts. These allegations are addressed separately below.

### A. Legal Assistance to Others

By confiscating mail and paperwork sent to him by two other prisoners (Peebles and Riker), Lindell contends that Esser violated Lindell's First Amendment right to provide legal assistance to these inmates. There is, however, no freestanding constitutional right to *receive or give* legal assistance from another inmate in prison. *See Shaw v. Murphy*, 532 U.S. 223, 226 (2001). Accordingly, Lindell may not proceed with a First Amendment claim based on his activities in providing legal assistance to other inmates.

### B. Work as a Journalist

By seizing records belonging to Mr. Peebles, Lindell further contends that Esser prevented him from writing about Peebles' medical care issues in violation of Lindell's First Amendment right to work as a prison journalist. Unfortunately for Lindell, this claim, too, lacks legal merit on the specific facts alleged in the amended complaint.

"In the First Amendment context, . . . a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v.*

7

*Procunier*, 417 U.S. 817, 822 (1974). Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with the press. *See Owen v. Lash*, 682 F.2d 648, 650-53 (7th Cir. 1982).

However, Lindell does *not* allege facts showing that Esser confiscated or censored a particular piece of writing or prevented him from publishing his views. *Cf. Abu-Jamal v. Price*, 154 F.3d 128 (3d Cir. 1998) (granting injunctive relief against a rule prohibiting prisoners from engaging in a business or profession, which interfered with a prisoner's efforts to publish his writings). Rather, Lindell claims that Esser interfered with his ability to investigate or review another inmate's medical records and prepare an article for prospective publication, presumably on Lindell's blog. Absent an allegation that Esser actually *prevented* Lindell from publishing his views, he does not articulate a First Amendment violation of the right to free speech or expression. *See Manning v. Bunnell*, No. 12-cv-2440, 2013 WL 2303231, *8 (E.D. Cal. May 24, 2013) (finding no First Amendment violation where prisoner failed to demonstrate that destruction or theft of mail prevented him from publishing). Accordingly, he will not be allowed to proceed with this claim either.

### C. Access to Courts

Finally, Lindell contends that Esser violated his First Amendment right to access the courts on July 25, 2012, by confiscating paperwork from his cell, thereby preventing him from filing a grievance and obstructing subsequent litigation. Lindell contends further that Esser violated his First Amendment right to access the courts on October 28, 2012, by confiscating a letter asking Riker to provide him with an affidavit for use in one of Lindell's court cases.

Prison inmates have a constitutional right to access the courts. *See Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977). To state a valid claim in this context, a prisoner must allege that he was deprived of access to the courts and suffered an actual injury as a result. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). To make this showing, a prisoner's complaint must "spell out, in minimal detail, the connection between the alleged [deprivation] and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). In other words, a prisoner must point to a concrete, non-frivolous claim or defense he might have raised but for his inability to access the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Marshall*, 445 F.3d at 968.

To the extent Lindell generally claims that depriving him of his property impeded his access to the courts, he still fails to allege specific facts showing that his ability to litigate any particular claim was affected by Esser's actions. In fact, one might reasonably infer from this failure that he was not ultimately prejudiced in any concrete way from pursuing a now-frivolous claim or defense, however much the confiscation of paperwork or a supporting affidavit may have made its pursuit more difficult. In particular, Lindell alleges no facts showing that he was prevented from raising a non-frivolous claim in court. *See Beese v. Todd*, 35 F. App'x 241, 243-44 (7th Cir. 2002) (holding for purposes of an access-to-courts claim that seizure of prisoner's legal papers, without more, does not demonstrate actual injury, such as the dismissal of a complaint or an inability to file a complaint at all). Because Lindell does not plead the requisite actual injury, his allegations of mere interference, standing alone, are similarly insufficient to state a claim.

Lindell may, within thirty days of the date of this order, file an amended complaint that cures this latter deficiency with regard to his claims that Lieutenant Esser denied him access to courts by confiscating his paperwork on July 25, 2012, and by confiscating a letter to Sean Riker on October 28, 2012. Otherwise, this entire case will be dismissed.

### ORDER

IT IS ORDERED that:

1. Plaintiff Nathaniel A. Lindell's request for leave to proceed with his amended complaint (dkt. #12) is DENIED.

2. Within thirty days of the date of this order, Lindell may file an amended complaint to cure deficiencies regarding his claim that Lieutenant Esser denied him access to courts by confiscating his paperwork on July 25, 2012, and by confiscating a letter to Sean Riker on October 28, 2012.

3. **If Lindell does not file an amended complaint as directed, this case will be dismissed without further notice.**

Entered this 2nd day of March, 2015.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

10